UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINH TRAN, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 11-CV-0374-CVE-FHM |
| | ) |
| NATIONWIDE MUTUAL INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| | ) |
|       **Defendant.** | ) |

## <u>OPINION AND ORDER</u>

Now before the Court are Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 24) and Defendant Nationwide Mutual Insurance Company's Motion for Summary Judgment and Brief in Support (Dkt. # 28).

## I.

On June 25, 2009, plaintiff was injured in an automobile accident with an uninsured motorist. The parties do not dispute that plaintiff was not at fault in the accident. At the time of the accident, Nationwide Mutual Insurance Company had issued an automobile insurance policy to plaintiff's father, in which plaintiff was a named insured and which provided a $25,000 limit on uninsured/underinsured motorist coverage.[1] On July 16, 2009, defendant sent a letter to plaintiff's father stating that it had received notice of plaintiff's claim and stating that the claims department would contact him to obtain additional information. Dkt. # 27-2. On July 28, 2009, defendant sent

---

[1] Although it is not in the summary judgment record, at some time after the June 25, 2009 accident, plaintiff's father must have submitted an uninsured motorist claim for property damage and plaintiff's personal injuries.

a letter to plaintiff's father confirming settlement of the property damage claim. The property damage claim is not at issue in this case.

On December 10, 2009, defendant sent a letter to plaintiff's attorney acknowledging his representation of plaintiff and requesting specific medical records and/or documentation regarding any potential lost wages. Dkt. # 27-4. On March 15, 2010, defendant sent a letter to plaintiff's attorney stating that no response had been received from plaintiff to defendant's December 10, 2009 letter. Dkt. # 27-5. Defendant's letter requested an update on plaintiff's status, inquired as to whether she was still being treated for her injuries, and again requested plaintiff's medical records. On August 12, 2010, defendant sent a third letter to plaintiff's attorney again requesting plaintiff's medical records and current medical status. Dkt. # 27-6. There is no evidence in the summary judgment record that plaintiff or her attorney contacted defendant at any time between December 2009 and late August 2010.

On August 26, 2010, plaintiff's attorney sent, to defendant, plaintiff's "relevant medical records and itemized billing," as well as a records release authorization. Dkt. # 24-1 at 1. The letter requested that defendant tender plaintiff's "policy limits within thirty (30) days." Id. Plaintiff states that these records demonstrated that the costs attributable to her injuries totaled $11,169.74. Dkt. # 24 at 2.[2] These medical records are the only evidence of plaintiff's economic damages in the summary judgment record.

---

[2] Defendant states in its response to plaintiff's motion that the medical records demonstrated that plaintiff's costs were only $10,507. Dkt. # 27 at 2. However, as discussed below, defendant ultimately tendered payment in the amount of plaintiff's calculation of $11,169.74. Thus, this Court finds the $662.74 discrepancy to be immaterial.

In early September 2010, defendant communicated a settlement offer to plaintiff's attorney in the amount of $14,000.[3] Defendant argues, and plaintiff contests, that plaintiff's attorney telephoned defendant on September 3, 2010, and "demanded" $23,000 in settlement. Dkt. # 28 at 3; Dkt. # 31 at 2. The parties agree that, on September 7, 2010, defendant offered to settle plaintiff's claim for $18,000, representing the undisputed economic damages of approximately $11,000, plus approximately $7,000 for general non-economic damages. The content of the September 7 communication is disputed: plaintiff's attorney requested that defendant tender the "undisputed" portion of $14,000[4] and claims that defendant told him that it refused to pay any benefits without receiving an executed release of all claims; defendant disputes that this statement was made. Dkt. # 27 at 2.

On October 12, 2010, defendant sent a letter to plaintiff's attorney confirming the offer of $18,000 in settlement of plaintiff's claim and requesting a response. Dkt. # 27-7. On December 4, 2010, defendant sent another letter to plaintiff's attorney, noting that a new claims adjuster had been assigned to the case and confirming the offer of $18,000. Dkt. # 27-8. The letter requested a response regarding the offer and stated that if the offer was accepted, plaintiff would need to sign a release. The defendant's activity logs show that plaintiff's attorney telephoned defendant on

---

[3] There appears to be some discrepancy as to whether the early September 2010 settlement offer was $14,000 or $14,500. In an affidavit submitted in support of plaintiff's summary judgment motion, plaintiff's attorney avers that the offer was $14,000. See Dkt. # 24-2 at 2. However, in defendant's motion, the statement of undisputed facts states that the offer was $14,500. Dkt. # 28 at 3. Plaintiff's response to defendant's motion does not dispute that amount. Dkt. # 31 at 2. Regardless, the parties agree that defendant made a settlement offer in this range in early September 2010.

[4] This amount is defendant's prior unaccepted offer of settlement, but it does not represent any "undisputed" substantiated economic damages.

December 9, 2010 and spoke with defendant's claims adjuster. The claims adjuster's notes state that plaintiff's attorney told her that "Oklahoma law requires [defendant] to pay the undisputed amount . . ." Dkt. # 27-9. The claims adjuster requested that plaintiff's counsel send her the law on which he was relying.

On December 23, 2010, defendant sent plaintiff's attorney a letter again confirming the $18,000 settlement offer. The letter further states that defendant's understanding of the law was that it did not require them to pay the "undisputed" amount for bodily injury claims. The letter stated that defendant believed that it was "not industry practice to settle uninsured motorist bodily injury claims piecemeal." Dkt. # 27-10. Finally, the letter requested that plaintiff's attorney communicate the offer to his client and respond to defendant.

On February 3, 2011, defendant sent another letter to plaintiff's counsel again confirming the offer of $18,000 and stating that it was aware of a physician's lien in the amount of $3,290. The letter requested that plaintiff's counsel communicate the offer to his client and respond to defendant. On February 25, 2011, defendant sent another letter to plaintiff's counsel again confirming the $18,000 offer. The letter stated that defendant believed "this offer to your client is fair given the injuries sustained were soft tissue in nature. Further, Ms. Tran has not sought treatment in over 1.5 years. Should you wish I re-evaluate the value of this claim, I welcome any medical documents you would like to present for my review." Dkt. # 27-12.

On March 31, 2011, defendant sent another letter to plaintiff's counsel again confirming the $18,000 settlement offer. The letter further stated that defendant's claims adjuster had left a message that day with plaintiff's counsel's assistant regarding the medical records in the claim file. The claims adjuster wrote that:

4

> I am willing to re-evaluate this claim, but I will need further documentation. The last date of treatment for Ms. Tran we have on file is 8/26/2009. Did Ms. Tran seek medical treatment after this date? If so, will you please send it to my attention at the fax below? In addition, we are requesting the emergency room and x-ray records from Southcrest Hospital, date of service 6/25/2009.

Dkt. # 27-13. On April 18, 2011, defendant sent another letter to plaintiff's counsel again confirming the $18,000 settlement offer. The letter stated that the claims adjuster was still willing to negotiate the value of the claim, but plaintiff had "not moved off of your demand of $23,000.00 since it was first presented in September 2010." Dkt. # 27-14. The letter again requested emergency room and x-ray records and invited plaintiff's counsel to send any other relevant medical records.

On May 23, 2011, defendant sent plaintiff's attorney another letter again confirming the $18,000 settlement offer. The letter also requested further information regarding issues plaintiff had with her back and spine prior to the accident, as well as all of plaintiff's medical records for the three years prior to the accident. Dkt. # 27-15. There is no evidence in the summary judgment record that plaintiff or her attorney contacted defendant at any time between December 2010 and May 2011.

On May 24, 2011, plaintiff filed this lawsuit in state court, alleging breach of contract and breach of the implied duty of good faith and fair dealing. Dkt. # 3-1. Defendant removed to federal court based on diversity of citizenship. Dkt. # 3. On December 6, 2011, defendant paid plaintiff $11,169.74, representing "the full amount of Ms. Tran's economic/special damages as submitted by [plaintiff's counsel] on Ms. Tran's behalf." Dkt. # 27-1; Dkt. # 31 at 5.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

5

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). In diversity cases governed by state law, this Court must ascertain and apply the state law so as to reach the same result that the state court would reach. Pub. Serv. Co. of Okla. v. Burlington N. R .R. Co. 53 F.3d 1090, 1096 (10th Cir. 1995).

**III.**

Plaintiff argues that she is entitled to summary judgment on both of her claims. Defendant argues that it is entitled to summary judgment on plaintiff's claims because plaintiff has not made any showing that there is a genuine dispute as to any material fact such that a trier of fact could find that defendant breached the contract or acted in bad faith.

**A. Contract Claim**

In her motion, plaintiff argues that she is entitled to summary judgment on her contract claim because "[i]t is axiomatic that in matters where no insurance payment has been made, such as here, once bad faith has been established as a matter of law, so too has Plaintiff made the requisite showing that a breach of contract has occurred." Dkt. # 24 at 4 (citing Lewis v. Farmers Ins. Co., 681 P.2d 67, 70 (Okla. 1983) (Opala, J., dissenting)). The Court notes that plaintiff's motion for summary judgment was filed before defendant paid plaintiff's economic damages. Assuming, arguendo, that plaintiff's statement of Oklahoma law is accurate, plaintiff's argument is moot, as defendant has paid plaintiff the undisputed amount of her economic damages. Plaintiff does not cite to any other legal authority that she is entitled to summary judgment on her contract claim.

Because the undisputed amount of plaintiff's economic damages has been paid, plaintiff cannot present any evidence that defendant breached its contract with plaintiff. There is no genuine dispute of material fact that defendant met its obligation to pay plaintiff her economic damages under the contract. Plaintiff has not met her burden to show that she is entitled to judgment as a matter of law. Defendant, on the other hand, has presented undisputed evidence that it has performed its obligation under the contract. For these reasons, defendant is entitled to summary judgment on plaintiff's breach of contract claim.

**B.     Breach of the Implied Duty of Good Faith and Fair Dealing**

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violation of this duty gives rise to an action in tort. Id. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989). The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage. "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984)). "The decisive question is whether the insurer has a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)).

To make a prima facie case against an insurance company for bad faith delay in payment, a plaintiff must establish:

> (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith claim.

Toppins v. Minn. Life Ins. Co., No. 11-5062, 2012 WL 313612, at *2 (10th Cir. Feb. 2, 2012) (unpublished)[5] (citing Beers v. Hillory, 241 P.3d 285, 292 (Okla. Civ. App.2010)). Plaintiff has the burden of proof. McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981). "Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law and the insurer is entitled to summary judgment." Dunbar v. State Farm Mut. Auto. Ins. Co., No. 10-CV-330-GKF-TLW, 2011 WL 5878383, at *7 (N.D. Okla. Nov. 23, 2011) (internal quotation omitted); cf. McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981) ("[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.").

Plaintiff argues that defendant's delay in paying plaintiff's undisputed economic damages was unreasonable and constitutes bad faith. However, mere delay in the payment of benefits is not enough to establish bad faith. Plaintiff must also establish that there was no legitimate dispute as to coverage. See Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335, 344 (10th Cir. 1995) ("Since a legitimate dispute as to coverage did exist, then as a matter of law [insurer] did not breach the duty of good faith merely by refusing to pay [plaintiff's] claim.").

Plaintiff submitted her medical bills to defendant on August 26, 2010. Within one week, defendant made a settlement offer to plaintiff approximately $3,000 more than the amount of plaintiff's economic damages. Within one week of the initial offer, defendant made a second offer to plaintiff approximately $7,000 more than the amount of plaintiff's economic damages. Plaintiff's

---

[5]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

attorney rejected these offers by telephone. However, despite the fact that defendant sent eight letters to plaintiff's attorney confirming the offer, offering to reevaluate the claim, and requesting further factual or legal support for plaintiff's demand for more money, there is no evidence in the record that plaintiff's attorney ever responded to defendant's offer in writing or ever presented defendant with any evidence whatsoever of plaintiff's position that her claim should be valued above $18,000. Because the parties could not agree on an appropriate value for plaintiff's non-economic damages, a legitimate dispute arose. Gov't Emps. Ins. Co. v. Quine, 264 P.3d 1245, 1250 (Okla. 2011) (The parties could not agree on an appropriate value for [insured's] general damage claim; thus, a legitimate dispute arose."). There is no evidence that plaintiff made any meaningful attempt to resolve this dispute with defendant. Plaintiff never sent defendant the law on which her attorney stated he was relying. Nor did plaintiff send defendant any information regarding her non-economic damages that might enable defendant to reevaluate her claim. In fact, there is no statement in the summary judgment record of whether plaintiff's alleged non-economic damages are based on lost wages, or emotional distress, or some other theory.

In light of plaintiff's failure to inform defendant of any additional information that would have assisted defendant in evaluating her claim, and the complete lack of evidence suggesting that defendant's offer was inadequate under the circumstances, the Court finds that no reasonable jury could conclude that defendant acted unreasonably in withholding payment. There is no genuine dispute as to any material fact that defendant's delay in payment was based on a legitimate dispute as to the value of plaintiff's claim. Because plaintiff has failed to present any evidence on which a reasonable jury could make a finding that defendant acted in bad faith, summary judgment for defendant is appropriate. See Roberts v. State Farm Mut. Auto. Ins. Co., 61 Fed. Appx. 587, 593
10

(10th Cir. 2003) (unpublished) (affirming summary judgment where there was a "complete lack of evidence suggesting [insurer] knew [plaintiff's] injury to be worth more than the range assigned to it"); Beers, 241 P.3d at 292 (affirming summary judgment where record "demonstrates factual and legal reasons for [insurer's] conduct" and plaintiff "did not produce . . . any evidence suggesting [insurer] intentionally delayed payment during this period for any improper purpose."); Ball v. Wilshire Ins. Co., 221 P.3d 717, 725 (Okla. 2009) ("If there is a legitimate dispute concerning coverage . . . withholding or delaying payment is not unreasonable or in bad faith.").

Finally, Plaintiff's reliance on Quine, 264 P.3d 1245, is misplaced. Plaintiff relies on Quine for the proposition that defendant's failure to unconditionally tender payment for the undisputed amount of plaintiff's economic damages constituted bad faith. However, Quine is not dispositive here. In Quine, the United States District Court for the Western District of Oklahoma certified a question of Oklahoma law to the Oklahoma Supreme Court. The Oklahoma Supreme Court articulated the question as follows:

> Does an insurer's refusal to unconditionally tender partial payment of UIM benefits amount to a breach of the obligation to act in good faith and deal fairly when (1) the insured's economic/special damages have been fully recovered through tortfeasor's liability insurance; (2) the insurer promptly investigates and places a value on the claim; (3) there is a legitimate dispute regarding insured's noneconomic/general damages; and (4) benefits due have not been firmly established? Based on the facts before us and following the doctrine of stare decisis, we answer the certified legal question in the negative.

Id. at 1246. Plaintiff argues that in this case, unlike in Quine, the tortfeasor had no liability insurance; thus, plaintiff could not recover her economic damages from the tortfeasor. Therefore, plaintiff argues, Quine dictates that the defendant's conduct must have breached the obligation to act in good faith and deal fairly.

11

Plaintiff's reading of Quine is simply incorrect; the holding in Quine is not dispositive. While there is dicta in Quine suggesting that a refusal to issue an unconditional advance payment to cover medical bills where the tortfeasor has no insurance may be more likely to constitute bad faith than the factual scenario in Quine, see id. at 1250 ("GEICO's refusal to issue an advance payment on Watkins' UIM claim presents a scenario far different than one involving a request for partial payment needed to satisfy unpaid medical expenses, lost wages, or other economic/special damages-cases where the impact of the loss is direct, immediate, and measurable with reasonable certainty"), Quine does not hold that such failure is per se bad faith. In light of the circumstances of the present case, the mere fact that plaintiff had outstanding medical bills did not obligate defendant to unconditionally tender partial payment of the claim. Plaintiff has failed to cite any legal authority to the contrary.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 24) is **denied**, and Defendant Nationwide Mutual Insurance Company's Motion for Summary Judgment and Brief in Support (Dkt. # 28) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's motion in limine (Dkt. # 29) is **moot**.

**DATED** this 6th day of February, 2012.

*Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT